**FITAPELLI & SCHAFFER, LLP**
Brian S. Schaffer
Maria Laura Crespo,
28 Liberty Street, 30th Floor
New York, NY 10005
Telephone: (212) 300-0375

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **JOSE ZAMORA, JULIAN DURAN, ULISES OCHOA, SELVIN MARTINEZ, EUCEBIO HERNANDEZ, CALIXTO FUNES GUZMAN, MANUEL FLORES, ADRIAN CANCELA, WILSON CHUQUI, and ANDERSON ESTRADA, individually and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>-against-<br><br>**RSC GROUP, LLC, BRETT STEINBERG individually, MARK DIMEDICI, individually, and FRANCISCO TAVARES individually,**<br><br>**Defendants.** | **Docket No: 21-cv-7728**<br><br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT** |

Jose Zamora, Julian Duran, Ulises Ochoa, Selvin Martinez, Eucebio Hernandez, Calixto Funes Guzman, Manuel Flores, Adrian Cancela, Wilson Chuqui, and Anderson Estrada ("Plaintiffs"), individually and on behalf of all others similarly situated, as class representatives, upon personal knowledge as to themselves, and upon information and belief as to other matters, allege as follows:

**NATURE OF THE ACTION**

1.     This lawsuit seeks to recover unpaid wages, overtime compensation and other damages for Plaintiffs and similarly situated construction workers, including, but not limited to,

laborers, masons, helpers, bricklayers, and all other similarly situated hourly construction workers (collectively, "Hourly Workers") who work or have worked for RSC Group, LLC, Brett Steinberg, Mark DiMedici, and Francisco Tavares (collectively, "RSC" or "Defendants").

2.     Owned and operated by Defendants Brett Steinberg, Mark DiMedici, and Francisco Tavares, RSC provides construction services, particularly masonry services, throughout the New York City metro area.

3.     RSC typically operates multiple active project sites at a time, including the primary location where Plaintiffs worked, which was located at approximately 626 Bergen Ave, Bronx, New York 10455.

4.     Plaintiffs bring this action to recover wages and benefits to which Plaintiffs were statutorily and contractually entitled to receive for work performed on various private and, upon information and belief, publicly financed, construction projects within the state of New York, including but not limited to: the New York City Housing Authority La Central project ("La Central").

5.     The La Central site is a large, multi-building affordable housing complex located at approximately 626 Bergen Ave, Bronx, New York 10455.

6.     At all relevant times, Defendants have compensated Plaintiffs and all other Hourly Workers on an hourly basis.

7.     Despite being non-exempt employees, Defendants have failed to properly pay Plaintiffs and other Hourly Workers all owed wages and overtime compensation at 1.5 times their regular rate of pay for all hours worked when they work over 40 hours per workweek.

8.     Throughout their respective periods of employment, Plaintiffs regularly worked over 40 hours per workweek.

9.     In this regard, Defendants engage in the impermissible practice of time-shaving,

whereby they reduce Plaintiffs hours to avoid making full payments for hours worked. Defendants regularly shave time from workers' pay in order to reduce labor costs and avoid paying overtime.

10.     Upon information and belief, some or all of the jobs that Plaintiffs worked on required payment of prevailing wages ("Prevailing Wage Sites"). For the work that Plaintiffs performed on the Prevailing Wage Sites, Plaintiffs seek to recover prevailing wages and supplemental benefits which they are contractually entitled to receive.

11.     Pursuant to Article 8 of the New York Labor Law, the rate of pay to be applied to all workmen, laborers, or mechanics on public works, as defined by section 1021-q of the Public Authorities Law, shall be no less than the "prevailing rate of wages" applicable to the locality where the work was performed.

12.     Upon information and belief, a schedule of prevailing rates of wages and supplemental benefits ("Prevailing Wage Schedule") to be paid was annexed to and was made a part of the Public Contracts. Upon further information and belief, the Prevailing Wage Schedule annexed to the Public Contracts were the schedule of prevailing rates of wages and supplemental benefits issued for the year in which the Public Contracts were let.

13.     Further, Defendants failed to provide adequate wage notices and accurate wage statements to Plaintiffs and other employees.

14.     Plaintiffs bring this action on behalf of themselves and all other similarly-situated Hourly Workers who elect to opt in to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and specifically, the collective action provision of 29 U.S.C. § 216(b).

15.     Plaintiffs also bring this action on behalf of themselves and all other similarly-situated Hourly Workers in New York pursuant to Federal Rule of Civil Procedure 23 ("Rule 23")

to remedy violations of the New York Labor Law, Article 19, §§ 650 *et seq*., Article 6, §§ 190 *et seq*. ("NYLL"), and the supporting New York State Department of Labor Regulations.

**THE PARTIES**

**Plaintiffs**

**Jose Zamora**

16.     Jose Zamora ("Zamora"), also known as Jose Montesinos Zamora, is an adult individual who is a resident of the State of New York.

17.     Zamora was employed by RSC from approximately November 2018 until approximately March 2019.

18.     Zamora is a covered employee within the meaning of the FLSA and the NYLL.

19.     A written consent form for Zamora is being filed with this Class Action Complaint.

**Julian Duran**

20.     Julian Duran ("Duran") is an adult individual who is a resident of the State of New York.

21.     Duran was employed by RSC from approximately December 2018 until approximately March 2019.

22.     Duran is a covered employee within the meaning of the FLSA and the NYLL.

23.     A written consent form for Duran is being filed with this Class Action Complaint.

**Ulises Ochoa**

24.     Ulises Ochoa ("Ochoa") is an adult individual who is a resident of the State of New York.

25.     Ochoa was employed by RSC from approximately December 2018 until approximately March 2019.

26.     Ochoa is a covered employee within the meaning of the FLSA and the NYLL.

27.     A written consent form for Ochoa is being filed with this Class Action Complaint.

**Selvin Martinez**

28.     Selvin Martinez ("Martinez") is an adult individual who is a resident of the State of New York.

29.     Martinez was employed by RSC from approximately December 2018 until approximately March 2019.

30.     Martinez is a covered employee within the meaning of the FLSA and the NYLL.

31.     A written consent form for Martinez is being filed with this Class Action Complaint.

**Eucebio Hernandez**

32.     Eucebio Hernandez ("Hernandez") is an adult individual who is a resident of the State of New York.

33.     Hernandez was employed by RSC from approximately December 2018 until approximately March 2019.

34.     Hernandez is a covered employee within the meaning of the FLSA and the NYLL.

35.     A written consent form for Hernandez is being filed with this Class Action Complaint.

**Calixto Funes Guzman**

36.     Calixto Funes Guzman ("Funes Guzman") is an adult individual who is a resident of the State of New York.

37.     Funes Guzman was employed by RSC from approximately December 2018 until approximately March 2019.

38.     Funes Guzman is a covered employee within the meaning of the FLSA and the

NYLL.

39.     A written consent form for Funes Guzman is being filed with this Class Action Complaint.

**Manuel Flores**

40.     Manuel Flores ("Flores") is an adult individual who is a resident of the State of New York.

41.     Flores was employed by RSC from approximately November 2018 until approximately March 2019.

42.     Flores is a covered employee within the meaning of the FLSA and the NYLL.

43.     A written consent form for Flores is being filed with this Class Action Complaint.

**Adrian Cancela**

44.     Adrian Cancela ("Cancela") is an adult individual who is a resident of the State of New York.

45.     Cancela was employed by RSC from approximately January 2019 until approximately April 2019.

46.     Cancela is a covered employee within the meaning of the FLSA and the NYLL.

47.     A written consent form for Cancela is being filed with this Class Action Complaint.

**Wilson Chuqui**

48.     Wilson Chuqui ("Chuqui") is an adult individual who is a resident of the State of New York.

49.     Chuqui was employed by RSC from approximately December 2018 until approximately April 2020.

50.     Chuqui is a covered employee within the meaning of the FLSA and the NYLL.

51.     A written consent form for Chuqui is being filed with this Class Action Complaint.

**Anderson Estrada**

52.     Anderson Estrada ("Estrada") is an adult individual who is a resident of the State of New York.

53.     Estrada was employed by RSC from approximately January 2019 until approximately March 2019.

54.     Estrada is a covered employee within the meaning of the FLSA and the NYLL.

55.     A written consent form for Estrada is being filed with this Class Action Complaint

**<u>Defendants</u>**

56.     Defendants jointly employed Plaintiffs and similarly-situated employees at all times relevant.

57.     Each Defendant has had substantial control over Plaintiffs and similarly-situated employees' working conditions, and over the unlawful policies and practices alleged herein.

58.     During all relevant times, Defendants have been Plaintiffs' employers within the meaning of the FLSA and the NYLL.

**RSC Group, LLC**

59.     RSC Group, LLC is a foreign business limited liability company organized and existing under the laws of New Jersey.

60.     RSC Group, LLC, was and is a covered employer within the meaning of the FLSA and the NYLL, and at all times relevant, employed Plaintiffs and similarly-situated employees.

61.     RSC Group, LLC has maintained control, oversight, and direction over Plaintiffs and similarly-situated employees, including timekeeping, payroll, and other employment practices that applied to them.

62.     RSC Group, LLC applies the same employment policies, practices, and procedures to all Hourly Workers in its operation, including policies, practices, and procedures with respect to payment of overtime compensation.

63.     Upon information and belief, at all relevant times, RSC Group, LLC has had an annual gross volume of sales in excess of $500,000.

**Brett Steinberg**

64.     At all relevant times herein, Brett Steinberg ("Steinberg") has owned and/or operated RSC.

65.     Upon information and belief, Steinberg is a resident of the State of New Jersey.

66.     Steinberg is an owner and partner of RSC and makes determinations regarding the hiring and firing of employees.

67.     Steinberg identifies himself as an owner and partner of RSC Group, LLC in media reports.[1]

68.     Steinberg is also identified as RSC Group, LLC's registered agent in its New Jersey Business Registration.

69.     Steinberg maintains a direct and significant management role in RSC. In this regard, Plaintiffs identified Steinberg as an owner of RSC.

70.     At all relevant times, Steinberg has had power over payroll decisions at RSC, including the power to retain time and/or wage records.

71.     At all relevant times, Steinberg has been actively involved in managing the day-to-day operations of RSC.

72.     At all relevant times, Steinberg has had the power to stop any illegal pay practices

---

[1] https://construction-today.com/news/rsc-group-llc/

that harmed Plaintiffs and similarly-situated employees at RSC.

73.     At all relevant times, Steinberg has had the power to transfer the assets and/or liabilities of RSC.

74.     At all relevant times, Steinberg has had the power the declare bankruptcy on behalf of RSC.

75.     At all relevant times, Steinberg has had the power to enter into contracts on behalf of RSC.

76.     At all relevant times, Steinberg has had the power to close, shut down, and/or sell RSC.

77.     Steinberg is a covered employer within the meaning of the FLSA and the NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiffs and similarly-situated employees.

**Mark DiMedici**

78.     At all relevant times herein, Mark DiMedici ("DiMedici") has owned and/or operated RSC.

79.     Upon information and belief, DiMedici is a resident of the State of New Jersey.

80.     DiMedici is an owner and partner of RSC and makes determinations regarding the hiring and firing of employees.

81.     DiMedici maintains a direct and significant management role in RSC. In this regard, Plaintiffs identified DiMedici as an owner of RSC.

82.     At all relevant times, DiMedici has had power over payroll decisions at RSC, including the power to retain time and/or wage records.

83.     At all relevant times, DiMedici has been actively involved in managing the day-to-

day operations of RSC.

84.     At all relevant times, DiMedici has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly-situated employees at RSC.

85.     At all relevant times, DiMedici has had the power to transfer the assets and/or liabilities of RSC.

86.     At all relevant times, DiMedici has had the power the declare bankruptcy on behalf of RSC.

87.     At all relevant times, DiMedici has had the power to enter into contracts on behalf of RSC.

88.     At all relevant times, DiMedici has had the power to close, shut down, and/or sell RSC.

89.     DiMedici is a covered employer within the meaning of the FLSA and NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiffs and similarly-situated employees.

**Francisco Tavares**

90.     At all relevant times herein, Francisco Tavares ("Tavares"), also known as Frank Tavares, has owned and/or operated RSC.

91.     Upon information and belief, Tavares is a resident of the State of New York.

92.     Tavares is an owner and partner of RSC and makes determinations regarding the hiring and firing of employees.

93.     Tavares maintains a direct and significant management role in RSC. In this regard, Plaintiffs identified Tavares as an owner of RSC.

94.     At all relevant times, Tavares has had power over payroll decisions at RSC,

including the power to retain time and/or wage records.

95.     At all relevant times, Tavares has been actively involved in managing the day-to-day operations of RSC.

96.     At all relevant times, Tavares has had the power to stop any illegal pay practices that harmed Plaintiffs and similarly-situated employees at RSC.

97.     At all relevant times, Tavares has had the power to transfer the assets and/or liabilities of RSC.

98.     At all relevant times, Tavares has had the power the declare bankruptcy on behalf of RSC.

99.     At all relevant times, Tavares has had the power to enter into contracts on behalf of RSC.

100.    At all relevant times, Tavares has had the power to close, shut down, and/or sell RSC.

101.    Tavares is a covered employer within the meaning of the FLSA and NYLL, and at all relevant times, he has employed and/or jointly employed Plaintiffs and similarly-situated employees.

<u>**JURISDICTION AND VENUE**</u>

102.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, and jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

103.    This Court also has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

104.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred

in this District, and Defendants conduct business in this District.

## COLLECTIVE ACTION ALLEGATIONS

105.    Plaintiffs bring the First Cause of Action, an FLSA claim, on behalf of themselves and all similarly-situated persons who work or have worked as Hourly Workers for RSC who elect to opt-in to this action (the "FLSA Collective").

106.    Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and the FLSA Collective.

107.    Consistent with Defendants' policies and patterns or practices, Plaintiffs and the FLSA Collective were not paid the proper premium overtime compensation of 1.5 times their regular rates of pay for all hours worked beyond 40 per workweek.

108.    All of the work that Plaintiffs and the FLSA Collective have performed has been assigned by Defendants, and/or Defendants have been aware of all of the work that Plaintiff and the FLSA Collective have performed.

109.    As part of their regular business practice, Defendants have intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the FLSA Collective. This policy and pattern or practice includes, but is not limited to, willfully failing to pay their employees, including Plaintiffs and the FLSA Collective, overtime wages for all hours worked in excess of 40 hours per workweek. In this regard, Defendants regularly made impermissible deductions from Plaintiffs' time, including time shaving practices.

## NEW YORK CLASS ACTION ALLEGATIONS

110.    Plaintiffs bring the Second, Third, Fourth, Fifth, and Sixth Causes of Action, NYLL claims, under Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons consisting of:

> All persons who work or have worked as Hourly
> Workers for RSC Group, LLC, in New York between
> September 15, 2015 and the date of final judgment in
> this matter (the "New York Class").

111.    The members of the New York Class are so numerous that joinder of all members

is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

112.    There are more than fifty members of the New York Class.

113.    Plaintiffs' claims are typical of those claims that could be alleged by any member

of the New York Class, and the relief sought is typical of the relief which would be sought by each

member of the New York Class in separate actions.

114.    Plaintiffs and the New York Class have all been injured in that they have been

uncompensated or under-compensated due to Defendants' common policies, practices, and

patterns of conduct.  Defendants' corporate-wide policies and practices affected everyone in the

New York Class similarly, and Defendants benefited from the same type of unfair and/or wrongful

acts as to each member of the New York Class.

115.    Plaintiffs are able to fairly and adequately protect the interests of the New York

Class and have no interests antagonistic to the New York Class.

116.    Plaintiffs are represented by attorneys who are experienced and competent in both

class action litigation and employment litigation and have previously represented many plaintiffs

and classes in wage and hour cases.

117.    A class action is superior to other available methods for the fair and efficient

adjudication of the controversy – particularly in the context of wage and hour litigation where

individual class members lack the financial resources to vigorously prosecute a lawsuit against

corporate defendants.  Class action treatment will permit a large number of similarly situated

persons to prosecute their common claims in a single forum simultaneously, efficiently, and

without the unnecessary duplication of efforts and expense that numerous individual actions engender.

118.     Common questions of law and fact exist as to the New York Class that predominate over any questions only affecting Plaintiffs and/or each member of the New York Class individually and include, but are not limited to, the following:

> (a) whether Defendants correctly compensated Plaintiffs and the New York Class for hours worked in excess of 40 per workweek;
>
> (b) whether Defendants correctly compensated Plaintiffs with all wages due, including prevailing wages when required on Prevailing Wage Sites;
>
> (c) whether Defendants failed to furnish Plaintiff and the New York Class with proper annual wage notices, as required by the NYLL; and
>
> (d) whether Defendants failed to furnish Plaintiff and the New York Class with accurate statements with every payment of wages, as required by the NYLL;

## PLAINTIFFS' FACTUAL ALLEGATIONS

119.     Consistent with their policies and patterns or practices as described herein, Defendants harmed Plaintiffs, individually, as follows:

**Jose Zamora**

120.     Zamora was employed by Defendants as a construction worker from approximately November 2018 until approximately March 2019.

121.     Specifically, Zamora was hired to perform masonry work.

122.     During his employment, Zamora worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

123.     During his employment, Zamora frequently worked over 40 hours per week.

Zamora worked, on average, approximately 50-60 hours per week.

124. Defendants failed to compensate Zamora with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

125. In this regard, Defendants shaved Zamora's time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hours per week.

126. Defendants regularly paid Zamora in a haphazard way, paying part of his wages via check form and part in cash.

127. Defendants failed to accurately keep track of Zamora's hours and compensate him for all work performed.

128. Throughout his employment, Defendants failed to provide Zamora with accurate wage statements with each payment of wages as required by the NYLL.

129. Defendants failed to provide Zamora with a proper annual wage notice as required by the NYLL.

**Julian Duran**

130. Duran was employed by Defendants as a construction worker from approximately December 2018 until approximately March 2019.

131. Specifically, Duran was hired to perform work as a masonry helper.

132. During his employment, Duran worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

133. During his employment, Duran frequently worked over 40 hours per week. Duran worked, on average, approximately 50-60 hours per week.

134. Defendants failed to compensate Duran with proper overtime compensation of 1.5

times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

135.     In this regard, Defendants shaved Duran's time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hours per week.

136.     Defendants regularly paid Duran in a haphazard way, paying part of his wages via check form and part in cash.

137.     Defendants failed to accurately keep track of Duran's hours and compensate him for all work performed.

138.     Throughout his employment, Defendants failed to provide Duran with accurate wage statements with each payment of wages as required by the NYLL.

139.     Defendants failed to provide Duran with a proper annual wage notice as required by the NYLL.

**Ulises Ochoa**

140.     Ochoa was employed by Defendants as a construction worker from approximately December 2018 until approximately March 2019.

141.     Specifically, Ochoa was hired to perform masonry work.

142.     During his employment, Ochoa worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

143.     During his employment, Ochoa frequently worked over 40 hours per week. Ochoa worked, on average, approximately 50-60 hours per week.

144.     Defendants failed to compensate Ochoa with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

16

145.    In this regard, Defendants shaved Ochoa's time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hour per week.

146.    Defendants regularly paid Ochoa in a haphazard way, paying part of his wages via check form and part in cash.

147.    Defendants failed to accurately keep track of Ochoa's hours and compensate him for all work performed.

148.    Throughout his employment, Defendants failed to provide Ochoa with accurate wage statements with each payment of wages as required by the NYLL.

149.    Defendants failed to provide Ochoa with a proper annual wage notice as required by the NYLL.

**Selvin Martinez**

150.    Martinez was employed by Defendants as a construction worker from approximately December 2018 until approximately March 2019.

151.    Specifically, Martinez was hired to perform work as a masonry helper.

152.    During his employment, Martinez worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

153.    During his employment, Martinez frequently worked over 40 hours per week. Martinez worked, on average, approximately 50-60 hours per week.

154.    Defendants failed to compensate Martinez with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

155.    In this regard, Defendants shaved Martinez's time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hour per week.

156.    Defendants regularly paid Martinez in a haphazard way, paying part of his wages via check form and part in cash.

157.    Defendants failed to accurately keep track of Martinez's hours and compensate him for all work performed.

158.    Throughout his employment, Defendants failed to provide Martinez with accurate wage statements with each payment of wages as required by the NYLL.

159.    Defendants failed to provide Martinez with a proper annual wage notice as required by the NYLL.

**Eucebio Hernandez**

160.    Hernandez was employed by Defendants as a construction worker from approximately December 2018 until approximately March 2019.

161.    Specifically, Hernandez was hired to perform masonry work.

162.    During his employment, Hernandez worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

163.    During his employment, Hernandez frequently worked over 40 hours per week. Zamora worked, on average, approximately 50-60 hours per week.

164.    Defendants failed to compensate Hernandez with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

165.    In this regard, Defendants shaved Hernandez's time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hour per week.

166.    Defendants regularly paid Hernandez in a haphazard way, paying part of his wages via check form and part in cash.

167.     Defendants failed to accurately keep track of Hernandez's hours and compensate him for all work performed.

168.     Throughout his employment, Defendants failed to provide Hernandez with accurate wage statements with each payment of wages as required by the NYLL.

169.     Defendants failed to provide Hernandez with a proper annual wage notice as required by the NYLL.

**Calixto Funes Guzman**

170.     Funes Guzman was employed by Defendants as a construction worker from approximately December 2018 until approximately March 2019.

171.     Specifically, Funes Guzman was hired to perform work as a masonry helper.

172.     During his employment, Funes Guzman worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

173.     During his employment, Funes Guzman frequently worked over 40 hours per week. Funes Guzman worked, on average, approximately 50-60 hours per week.

174.     Defendants failed to compensate Funes Guzman with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

175.     In this regard, Defendants shaved Funes Guzman's time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hour per week.

176.     Defendants regularly paid Funes Guzman in a haphazard way, paying part of his wages via check form and part in cash.

177.     Defendants failed to accurately keep track of Funes Guzman's hours and compensate him for all work performed.

178.    Throughout his employment, Defendants failed to provide Funes Guzman with accurate wage statements with each payment of wages as required by the NYLL.

179.    Defendants failed to provide Funes Guzman with a proper annual wage notice as required by the NYLL.

**Manuel Flores**

180.    Flores was employed by Defendants as a construction worker from approximately November 2018 until approximately March 2019.

181.    Specifically, Flores was hired to perform masonry work.

182.    During his employment, Flores worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

183.    During his employment, Flores frequently worked over 40 hours per week. Flores worked, on average, approximately 50-60 hours per week.

184.    Defendants failed to compensate Flores with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

185.    In this regard, Defendants shaved Flores' time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hour per week.

186.    Defendants regularly paid Flores in a haphazard way, paying part of his wages via check form and part in cash.

187.    Defendants failed to accurately keep track of Flores' hours and compensate him for all work performed.

188.    Throughout his employment, Defendants failed to provide Flores with accurate wage statements with each payment of wages as required by the NYLL.

189.    Defendants failed to provide Flores with a proper annual wage notice as required by the NYLL.

**Adrian Cancela**

190.    Cancela was employed by Defendants as a construction worker from approximately January 2019 until approximately April 2019.

191.    Specifically, Cancela was hired to perform masonry work.

192.    During his employment, Cancela worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

193.    During his employment, Cancela frequently worked over 40 hours per week. Cancela worked, on average, approximately 50-60 hours per week.

194.    Defendants failed to compensate Cancela with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

195.    In this regard, Defendants shaved Cancela's time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hour per week.

196.    Defendants failed to accurately keep track of Cancela's hours and compensate him for all work performed.

197.    Throughout his employment, Defendants failed to provide Cancela with accurate wage statements with each payment of wages as required by the NYLL.

198.    Defendants failed to provide Cancela with a proper annual wage notice as required by the NYLL.

**Wilson Chuqui**

199.    Chuqui was employed by Defendants as a construction worker from approximately

December 2018 until approximately April 2020.

200.    Specifically, Chuqui was hired to perform masonry work.

201.    During his employment, Chuqui worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

202.    During his employment, Chuqui frequently worked over 40 hours per week. Chuqui worked, on average, approximately 50-60 hours per week.

203.    Defendants failed to compensate Chuqui with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

204.    In this regard, Defendants shaved Chuqui's time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hour per week.

205.    Defendants regularly paid Chuqui in a haphazard way, paying part of his wages via check form and part in cash.

206.    Defendants failed to accurately keep track of Chuqui's hours and compensate him for all work performed.

207.    Throughout his employment, Defendants failed to provide Chuqui with accurate wage statements with each payment of wages as required by the NYLL.

208.    Defendants failed to provide Chuqui with a proper annual wage notice as required by the NYLL.

**Anderson Estrada**

209.    Estrada was employed by Defendants as a construction worker from approximately January 2019 until approximately March 2019.

210.    Specifically, Estrada was hired to perform work as a masonry helper.

211.    During his employment, Estrada worked for Defendants at multiple job sites throughout New York City, but primarily worked at the La Central project.

212.    During his employment, Estrada frequently worked over 40 hours per week. Estrada worked, on average, approximately 50-60 hours per week.

213.    Defendants failed to compensate Estrada with proper overtime compensation of 1.5 times his regular rate of pay for all hours he was suffered or permitted to work in excess of 40 hours per workweek.

214.    In this regard, Defendants shaved Estrada's time and hours, thus impermissibly reducing his compensation for all of the hours worked over 40 hour per week.

215.    Defendants regularly paid Estrada in a haphazard way, paying part of his wages via check form and part in cash.

216.    Defendants failed to accurately keep track of Estrada's hours and compensate him for all work performed.

217.    Throughout his employment, Defendants failed to provide Estrada with accurate wage statements with each payment of wages as required by the NYLL.

218.    Defendants failed to provide Estrada with a proper annual wage notice as required by the NYLL.

### FIRST CAUSE OF ACTION
**Fair Labor Standards Act – Overtime Wages**
**(Brought on behalf of Plaintiffs and the FLSA Collective)**

219.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

220.    The overtime wage provisions set forth in the FLSA, 29 U.S.C. §§ 201 et seq., and the supporting federal regulations, apply to Defendants and protect Plaintiffs and the members of

FLSA Collective.

221.    Plaintiffs and the FLSA Collective worked in excess of 40 hours during workweeks in the relevant period.

222.    Defendants failed to pay Plaintiffs and the FLSA Collective the premium overtime wages to which they were entitled under the FLSA – at a rate of 1.5 times their regular rate of pay for all hours worked in excess of 40 per workweek.

223.    As a result of Defendants' willful violations of the FLSA, Plaintiffs and the FLSA Collective have suffered damages by being denied overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, attorneys' fees and costs, and other compensation pursuant to 29 U.S.C. §§ 201 et seq.

**SECOND CAUSE OF ACTION**
**New York Labor Law – Overtime Wages**
**(Brought on behalf of Plaintiffs and the New York Class)**

224.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

225.    The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Plaintiffs and the New York Class.

226.    Defendants failed to pay Plaintiffs and the New York Class the premium overtime wages to which they were entitled under the NYLL and the supporting New York State Department of Labor Regulations – at a rate of 1.5 times their regular rate of pay – for all hours worked beyond 40 per workweek.

227.    Due to Defendants' violations of the NYLL, Plaintiffs and the New York Class are entitled to recover from Defendants their unpaid overtime wages, liquidated damages as provided for by the NYLL, reasonable attorneys' fees and costs, and pre-judgment and post-judgment

interest.

### THIRD CAUSE OF ACTION
**New York Labor Law – Breach of Contract**
**(Brought on behalf of Plaintiffs and the New York Class)**

228.    Plaintiffs realleges and incorporates by reference all allegations in all preceding paragraphs.

229.    Upon information and belief, Defendants entered into public contracts which set forth the prevailing rates of wages and supplemental benefits to be paid to Plaintiffs and other construction workers that performed work on these contracts for Defendants.

230.    Those prevailing wage rates and supplemental benefits were made part of the public contract for the benefit of Plaintiffs and other construction workers.

231.    Defendants have breached the public contract and have failed to pay Plaintiffs and other hourly construction workers the prevailing wages and supplemental benefits for all labor performed on the public contracts.

232.    Due to Defendants' breach, Defendants are liable to Plaintiffs and the New York Class in an amount to be determined at trial, plus interests, costs, and attorneys' fees.

### FOURTH CAUSE OF ACTION
**New York Labor Law – Unpaid Wages**
**(Brought on behalf of Plaintiffs and the New York Class)**

233.    Plaintiffs realleges and incorporate by reference all allegations in all preceding paragraphs.

234.    The prevailing wages, supplemental benefits, and overtime compensation not paid to the Plaintiffs and the other members of the New York Class were wages within the meaning of New York Labor Law Section 190, 198, and 198(1-a).

235.    Defendants violated New York Labor Law Section 191 by failing to timey pay Plaintiffs and other members of the New York Class the required prevailing wages and

supplemental benefits for the work they performed on La Central.

236.    By reason of the forgoing, Defendants are liable to Plaintiffs and the New York

Class in an amount to be determined at trial, plus damages, interest, attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Proper Annual Wage Notices
### (Brought on behalf of Plaintiffs and the New York Class)

237.    Plaintiffs reallege and incorporate by reference all allegations in all preceding

paragraphs.

238.    Defendants have failed to supply Plaintiffs and the New York Class with a proper

time of hire annual wage notice, as required by NYLL, Article 6, § 195(1), in English or in the

language identified as their primary language, at the time of hiring, containing, among other items:

the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece,

commission, or other; allowances, if any, claimed as part of the minimum wage; the regular pay

day designated by the employer in accordance with section one hundred ninety-one of this article;

overtime rate; the name of the employer; any "doing business as" names used by the employer;

the physical address of the employer's main office or principal place of business, and a mailing

address if different; the telephone number of the employer; plus such other information as the

commissioner deems material and necessary.

239.    Due to Defendants' violations of NYLL, Article 6, § 195(1), effective February 27,

2015, Plaintiffs and the New York Class are entitled to statutory penalties of fifty dollars for each

workday that Defendants failed to provide them with wage notices, or a total of five thousand

dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6,

§ 198(1-b).

## SIXTH CAUSE OF ACTION
### New York Labor Law – Failure to Provide Accurate Wage Statements
### (Brought on behalf of Plaintiffs and the New York Class)

240. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

241. Defendants failed to supply Plaintiffs and the New York Class with an accurate statement of wages with every payment of wages as required by NYLL, Article 6, § 195(3), listing: dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

242. Due to Defendants' violations of NYLL, Article 6, § 195(3), effective February 27, 2015, Plaintiffs and the New York Class are entitled to statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide them with accurate wage statements, or a total of five thousand dollars each, as well as reasonable attorneys' fees and costs as provided for by NYLL, Article 6, § 198(1-d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually, and on behalf of all other similarly situated persons, respectfully request that this Court grant the following relief:

A. That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all Hourly Workers who are presently, or have at any time during the six years immediately preceding the filing of this suit, up through and including the

date of this Court's issuance of court-supervised notice, worked for RSC. Such notice shall inform them that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages;

B.      Unpaid overtime wages, and an additional and equal amount as liquidated damages pursuant to the FLSA and the supporting United States Department of Labor Regulations;

C.      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

D.      Designation of Plaintiffs as representatives of the NY Rule 23 Class and counsel of record as Class Counsel;

E.      Unpaid wages and overtime wages and liquidated damages permitted by law pursuant to the NYLL and the supporting New York State Department of Labor Regulations;

F.      Damages, including unpaid prevailing wages, in an amount to be determined at trial plus liquidated damages as permitted under the FLSA in the amount equal to the amount of unpaid wages, interest, attorneys' fees and costs;

G.      Statutory penalties of fifty dollars for each workday that Defendants failed to provide Plaintiffs and the NY Rule 23 Class with proper annual wage notices, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

H.      Statutory penalties of two hundred fifty dollars for each workday that Defendants failed to provide Plaintiffs and the NY Rule 23 Class with accurate wage statements, or a total of five thousand dollars each, as provided for by NYLL, Article 6 § 198;

I.      Prejudgment and post-judgment interest;

J.      Reasonable attorneys' fees and costs of the action; and

K.      Such other relief as this Court shall deem just and proper.


Dated: New York, New York
         September 15, 2021




                                        Respectfully submitted,




                                        /s/Brian S. Schaffer
                                        Brian S. Schaffer

                                        **FITAPELLI & SCHAFFER, LLP**
                                        Brian S. Schaffer
                                        Maria Laura Crespo,
                                        28 Liberty Street, 30th Floor
                                        New York, NY 10005
                                        Telephone: (212) 300-0375

                                        *Attorneys for Plaintiffs and*
                                        *the Putative Class*